***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OTTO KRUPP, | : | |
| Petitioner, | : | Civil Action No. 13-7777 (MAS) |
| v. | : | OPINION |
| NJ STATE PAROLE BOARD, | : | |
| Respondent. | : | |

**SHIPP, District Judge:**

*Pro se* Petitioner Otto Krupp, confined at the New Jersey State Prison in Trenton, New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging both a sentence imposed for murder, as well as a denial of parole, by the State of New Jersey. For the reasons stated below, the Court denies the Petition.

**I.    FACTUAL BACKGROUND**

In 1979, Petitioner was convicted, by the State of New Jersey, of first-degree murder and murder while armed. *Krupp v. Neubert*, No. 89-4106, slip op. at 1 (D.N.J. issued Feb. 7, 1991), ECF No. 11-2 at 17.[1] Petitioner was sentenced to life imprisonment for the first degree murder, and a consecutive nine-to-ten-year term for committing the murder while armed. *Id.* Petitioner's crimes were proscribed in Title 2A of the New Jersey Statute at the time ("2A Code"). *Id.*

---

[1] This was the opinion issued in denying Petitioner's first federal habeas petition filed in this district court, challenging the same sentence as the instant Petition. The Court hereby relies on the findings of fact by Judge Joseph H. Rodriguez in his opinion.

However, that same year, New Jersey adopted a new criminal code, under Title 2C of the statute ("2C Code"). The 2C Code abolished the 2A Code, and allowed convicts to move for resentencing if the "defendant's prior offense has been eliminated by the new Code or where the maximum sentence a defendant is serving exceeds the maximum established for such an offense under the new Code." *Id.* (citing *State v. McDermott*, 175, N.J. Super. 334, 338-39 (App. Div. 1980)). Petitioner, who was sentenced under the 2A Code, moved to be resentenced under the 2C Code. *Id.* at 2. Petitioner's request was denied by the state court. *Id.* at 3. Petitioner appealed the denial, and the state appellate court affirmed that denial on November 12, 1986. *Id.* Since then, it appears that Petitioner has filed two other federal habeas petitions in this district court, the aforementioned *Krupp v. Neubert*, No. 89-4106 ("1989 Petition"), and *Krupp v. Neubert*, No. 94-0367 (D.N.J. filed Jan. 25, 1994).

Petitioner was paroled on August 1, 2001. *Krupp v. N.J. State Parole Bd.*, No. A-1968-12T2, slip op. at 2 (N.J. Super. App. Div. May 13, 2014).[2] On September 13, 2010, he was returned to custody on a parole violation, for failing to: "(1) report; (2) complete the electronic monitoring (EM) program; (3) obtain permission for out-of-state travel; and (4) refrain from contact with 'J.D.' in violation of a domestic violence restraining order." *Id.* Petitioner had travelled out of the country, to Guatemala, without obtaining permission from his parole officer, and in fact was apprehended there for the parole violation. *Id.* When Petitioner was again eligible for parole on November 2, 2011, the parole review panel denied parole. *Id.* Petitioner administratively appealed that denial, and initially, it appears that the administrative board remanded back to the parole panel, on the account that the panel had erroneously applied the substantive standard of review for a 2C

---

[2] This was the decision by the state appellate court affirming Petitioner's most recent denial of parole, a decision that Petitioner challenges in the instant Petition.

2

Code conviction to Petitioner, instead of the substantive standard of review for a 2A Code conviction. (Resp., Ex. C, ECF No. 11-5 at 9 n.4.) The parole panel again denied parole, and that denial was upheld by the administrative board. *Krupp*, No. A-1968-12T2, slip op. at 3. Petitioner then appealed to the state appellate court, and that court also affirmed the denial. *Id.* at 1. Petitioner then filed the instant Petition.

In the Petition, Petitioner raises five grounds for relief. Grounds One and Two both raise substantially the same claim, that the state court erred in not granting him a resentencing under the new 2C Code. Ground Three claims that the application of the 2C Code to his parole proceedings violated the Ex Post Facto Clause of the Constitution. The 2C Code, of course, contains criminal statutes, therefore could not have governed Petitioner's parole proceedings. Instead, the Court construes Petitioner's claim as one challenging the application of the Parole Act of 1979 ("1979 Act"), passed as a compliment of the 2C Code, to his parole proceedings. *See* A Brief Overview of the Parole Process in New Jersey, http://www.nj.gov/parole/docs/ParoleProcess.pdf (last visited July 7, 2016). Ground Four claims that the denial of parole was improper on the merits, and Ground Five claims that he received ineffective assistance of counsel during his resentencing.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

3

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

### III. DISCUSSION

#### A. Grounds One, Two, and Five – Successive Petition

Respondent argues that Grounds One, Two, and Five are barred because they either should have been raised in the previous habeas petitions, or they are time-barred. Under the habeas

statutes, "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed," and "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed" if, in essence, such claim could have been presented in the prior petition but was not. 28 U.S.C. § 2244(b); *see Foster v. Chatman*, 136 S. Ct. 1737, 1759 (2016) (Alito, J., concurring in judgment). Although § 2244(b) was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), prior to AEDPA's enactment, these limitations on second and successive petitions already existed in case law. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (describing the pre-AEDPA "successive claims" and "abuse of the writ" doctrines, which paralleled the limitations in § 2244(b)). So while both of Petitioner's prior habeas petitions were filed before AEDPA's enactment, he was subject to the same limitations through the existing case law at the time.

In Petitioner's first habeas petition, the 1989 Petition, he raised the exact claim that he is raising now in Grounds One and Two—that the state court erred in denying him a resentencing. *See Neubert*, No. 89-4106, slip op. at 7. Petitioner did not raise Ground Five, the ineffective assistance of counsel claim, in that petition, but it is clear that he certainly could have; the 1989 Petition was filed almost three years after the denial of resentencing was affirmed by the state appellate court, long after the alleged ineffective assistance had occurred. Therefore, Grounds One, Two, and Five must be dismissed, either because the claims had already been presented, or because they could have been presented, in a prior petition. As such, the Court denies relief on these grounds.

5

### B. Ground Three – Ex Post Facto Challenge

Next, Petitioner challenges his denial of parole, asserting that the application of the 1979 Act to his parole proceedings violated the Ex Post Facto Clause of the Constitution. In affirming the denial of parole, the state appellate court did not articulate its reasoning for rejecting this claim, instead it relied entirely on the administrative board's decision. *See Krupp*, No. A-1968-12T2, slip op. at 2. Although neither party has submitted the administrative board's full decision on the record, from the partial decision that Petitioner submitted as part of his appellate brief to the state court, which is in the record, it is clear the administrative board held that the 1979 Act did not violate the Ex Post Facto Clause. (*See* Resp., Ex. C, ECF No. 11-5 at 10 ("[T]he 1997 amendment 'did not violate the Ex Post Facto Clause since the change in the law was a procedural modification that [did] not constitute a substantive change in the parole release criteria[.]'") (quoting *Trantino v. N.J. State Parole Bd.*, 331 N.J. Super. 577, 610-11 (App. Div. 2000).)

The Court finds the state court's decision was a reasonable application of relevant Supreme Court precedent. In *Garner v. Jones*, 529 U.S. 244 (2000), the Supreme Court dealt with a very similar challenge, stemming from an amendment to the parole regulations in the State of Georgia. The petitioner in *Garner* was convicted of two murders, and sentenced to two consecutive life sentences for his crimes. *Id.* at 247. At the time of his convictions, Georgia law required a parole review every three years for a prisoner serving a life sentence. *Id.* While the petitioner was still serving his second life sentence, the regulation was changed so that a parole review was only required for lifetime inmates every eight years, which the parole board may shorten at its discretion. *Id.* In 1995, the Georgia parole board denied the petitioner parole, and set the next review for 2003, in accordance with the new regulation. *Id.* at 248. The petitioner challenged the application of the new regulation to his parole proceedings, asserting that the application of the

new regulation violated the Ex Post Facto Clause of the Constitution, and the Eleventh Circuit agreed. *Id.* In holding so, the Eleventh Circuit partly reasoned that lengthening of the review period would have subjected at least some prisoners, namely those who were likely to be granted parole, to longer incarceration. *Id.* at 249.

The Supreme Court reversed. *Id.* "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Id.* "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Id.* at 250. "[N]ot every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited. The question is a matter of 'degree.' The controlling inquiry [is] whether retroactive application of the change in . . . law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). The Supreme Court held that although the new regulation increased the maximum time between parole reviews, since the parole board had the discretion to shorten the review period, the new regulation, "in its operation, [did not] create[] a significant risk of increased punishment for *respondent*." *Id.* at 257 (emphasis added).

Here, Petitioner asserts that under the old parole process, in effect at the time of his conviction and sentence, a yearly hearing was conducted to determine an inmate's parole eligibility. The 1979 Act, however, instituted a new process, and replaced year hearings with annual reviews, which, at the parole board's discretion, may occur on non-yearly intervals. (ECF No. 6-1 at 17.) Indeed, Petitioner asserts that he only received three such reviews in fifteen years. (*Id.*) In support of his argument that there was a substantial risk of increased punishment, Petitioner asserts that prior to the 1979 Act, the average length of incarceration for lifetime inmates

7

was 14.5 years, while under the new process, because reviews are held significantly less often, the average length of incarceration doubled. (*Id.* at 16.) Petitioner submits no evidence to substantiate his statistical assertions.

However, Petitioner's argument is essentially the same argument that was made by the petitioner in *Garner*. Even if the Court accepts Petitioner's statistical assertions as true, they do not establish how the 1979 Act created a significant risk of increased punishment for *him*. Petitioner offers no factual allegations nor evidence that there was a significant likelihood *he* would have been granted parole if reviews were held yearly, or that the parole board's decision not to grant him annual review was somehow arbitrary and an abuse of discretion. Indeed, as stated above, the administrative board explicitly instructed the parole panel to apply, to Petitioner, the old substantive standard of review for a 2A Code conviction, thereby removing any concern that his parole eligibility may have been materially changed by the 1979 Act. As was implicit in the *Garner* decision, a mere *possibility* of that a petitioner may be granted parole earlier does not equate to a significant risk of increased punishment. Thus, Petitioner has failed to establish how the application of the 1979 Act to *his* parole proceedings violated *his* rights under the Ex Post Facto Clause—to wit, as the Court noted above, the state appellate court has already held that application of the 1979 Act to those convicted prior to its enactment, on its face, does not violate the Ex Post Facto Clause, *see Trantino*, 331 N.J. Super. at 610-11, a holding that has been echoed by the Third Circuit as well, *see Mason v. Pinchak*, 75 F. App'x 867, 869 (3d Cir. 2003).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). In order to challenge the state court's factual determination, that the 1979 Act did not violate Petitioner's rights under the Ex Post Facto Clause, Petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." *Id.* As stated above, Petitioner relies solely on unsubstantiated factual allegations, and has proffered no evidence of any kind in support. This falls far short of satisfying the "clear and convincing evidence" burden. Accordingly, the Court finds the state court's ruling was a reasonable application of Supreme Court law based on a reasonable determination of the facts, and relief on this ground is denied.

### C. Ground Four – Erroneous Parole Denial

Finally, Petitioner asserts that the state's denial of parole was a violation of his liberty interest. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation and quotation marks omitted). It is well-established that parole is not a constitutionally protected liberty interest unless the state explicitly establishes procedures to offer parole. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). "There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication." *Id.* Moreover, even if a liberty interest has been created by the State, federal law does not control any specific methodology for calculating sentencing credit for state prisoners, and the role of the federal court is limited to the enforcement of the due process rights created by state law. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7-9 (1979).

There is no dispute that New Jersey has a parole system, and that system has created a liberty interest. *See N.J. Parole Bd. v. Byrne*, 93 N.J. 192, 208 (1983) (finding that the New Jersey parole process creates a liberty interest sufficient to invoke procedural protection). In order to establish a due process violation, Petitioner must allege sufficient facts to show that the state

violated his due process rights when it denied him parole. On a federal habeas petition, because there is no constitutional right to parole, the Supreme Court has instructed that federal courts should focus only on whether the petitioner received the constitutionally required procedural protection. As the Supreme Court explained:

> It will not do to pronounce [the state] rule to be "a component" of the liberty interest. Such reasoning would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests, including (of course) those in criminal prosecutions. That has never been the law. To the contrary, we have long recognized that a mere error of state law is not a denial of due process. Because the only federal right at issue is procedural, the relevant inquiry is what process [a petitioner] received, not whether the state court decided the case correctly.

*Swarthout*, 562 U.S. at 221 (citations and quotations omitted). In a parole context, that minimal protection required by the Constitution is simply that the Petitioner "was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." *Id.*; *see Goodman v. McVey*, 428 F. App'x 125, 127 (3d Cir. 2011) ("[P]rocedural due process [for a state-created interest] is generally satisfied if the procedures employed afford notice of the hearing, an opportunity to be heard, and notice of any adverse action.").

Here, Petitioner does not allege that he was not provided the minimal protection required by the Due Process Clause, namely that he was provided an opportunity to be heard, and provided a statement of the reasons why parole was denied. Indeed, Petitioner was able to appeal the decision denying him parole with both the administrative board *and* the state appellate court, and in both instances, he was provided with lengthy written decisions explaining the reasons for the denial. That is all the Constitution requires. Petitioner challenges, instead, the *merits* of the state's denial, but that is not a cognizable claim in a federal habeas petition. "[F]ederal habeas corpus relief does not lie for errors of state law." *Swarthout*, 562 U.S. at 219 (citation and quotation

omitted). Even if the parole board, under state law, was wrong in denying Petitioner parole, this Court has no authority to review that decision. Hence, the Court denies relief on this ground.

### D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV. CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

/s/ Michael A. Shipp
Michael A. Shipp, U.S.D.J.

Dated: 8/25/16